UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA ANN ARAGONEZ,<br><br>        Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. 1:23-cv-00723-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 15). |

    This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for disability benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 11).

    Plaintiff presents the following six issues:

    1. Whether the ALJ provided a reviewable record.

    2. Whether the AL[J] addresses the combination of impairments in the RFC.

    3. Whether the ALJ provided an explanation to discard CE Neurologist Sharma's

functional evaluation.

4. Whether the ALJ's past relevant work finding is supported by the record.

5. Whether the ALJ provided clear and convincing reasons to discard Ms. Aragonez's statements.

6. Whether the credit as true doctrine should be applied.

(ECF No. 15, p. 12).

Having reviewed the record, administrative transcript, parties' briefs, and the applicable law, the Court finds as follows.

## I.   ANALYSIS

### A.   RFC

Plaintiff's arguments that the ALJ failed to (1) provide a reviewable record; and (2) address her combination of impairments in the RFC are related and will be addressed in turn as part of her general challenge to the RFC.

A claimant's RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted). In reviewing findings of fact with respect to RFC assessments, this Court determines whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal citation omitted).

The ALJ formulated the following RFC in this case:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can lift and/or carry up to 20 pounds occasionally, 10 pounds frequently. She can sit, stand or walk up to six hours each in an eight-hour workday. She can occasionally climb ramps or stairs, and occasionally stoop, crouch, crawl, and kneel. She cannot climb ladders, ropes or scaffolds. She cannot work around heights or dangerous moving machinery.

(A.R. 19).

### 1.     Reviewable record

In challenging the RFC, Plaintiff first argues that the ALJ failed to provide a reviewable record because the ALJ did "not provide medical opinion to support his findings" but instead "picks from parts of [the] record to support his findings." (ECF No. 15, p. 14). Defendant argues that substantial evidence supports the RFC, including medical opinions. (ECF No. 17, pp. 8-9).

As an initial matter, "because it is the ALJ's responsibility to formulate an RFC that is based on the record *as a whole*, . . . the RFC need not exactly match the opinion or findings of any particular medical source." *Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 n.8 (E.D. Cal. Aug. 22, 2014). However, "an ALJ is not allowed to make medical judgments, but only legal judgments based on medical evidence." *Duarte v. Saul*, No. 2:19-CV-01019 AC, 2020 WL 5257597, at *5 (E.D. Cal. Sept. 3, 2020).

Here, the ALJ did in fact rely on medical opinion in formulating the RFC. Specifically, the ALJ found the opinions of state agency physicians persuasive and imposed an RFC that largely matched the RFC they proposed. (A.R. 22, 57-59, 75-77).

Additionally, the ALJ looked to the record as a whole in formulating the RFC. Among other things, the ALJ summarized the record, noting medical evidence inconsistent with Plaintiff's claims of disability, including normal exam findings, such as normal gait. (A.R. 22). In this review, the ALJ noted findings that would generally be favorable to Plaintiff's claims of disability, such as her reports of pain. (A.R. 21). Further, the ALJ considered Plaintiff's subjective complaints, but deemed them inconsistent with other record evidence, *e.g.*, although she testified that she did not perform household chores, she elsewhere reported being active at home and doing light chores. (A.R. 21-22, 37, 619).

A review of the record thus shows that the ALJ did not impermissibly rely on select portions of the record to support the decision and did not make medical judgments in formulating the RFC. Thus, the Court finds no error.

### 2.     Combination of Impairments

Plaintiff argues that the ALJ did not address her combination of impairments—diabetes, obesity, decreased sensation in her left foot, and reduced vision in her left eye—when formulating the RFC. (ECF No. 15, pp. 16-29). Defendant argues that the ALJ properly considered these impairments, and in any event, Plaintiff has not identified any additional limitations that would have been warranted in the RFC. (ECF No. 17, pp. 9-10).

The Ninth Circuit has "repeatedly held that an ALJ need not discuss all evidence presented to her. Rather, she must explain why significant probative evidence has been rejected." *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022) (internal quotations marks and citation omitted). Here, Plaintiff has failed to point to any probative evidence that the ALJ rejected. As to diabetes, Plaintiff argues that she struggled to control her blood sugar but does not point to any particular evidence that the ALJ overlooked or explain how that evidence, even if overlooked, would have changed the disability determination. (ECF No. 15, p. 16); *see Alexander v. Saul*, No. 1:19-CV-01208-SKO, 2021 WL 929615, at *11 (E.D. Cal. Mar. 11, 2021) (finding harmless error where a plaintiff did "not identify what portion of her testimony the ALJ should have credited or what additional limitations should have been included in her mental RFC, nor [did] she explain how the ALJ's mental RFC determination is inconsistent with her testimony"). As to diabetes the ALJ noted that it "is controlled when she is compliant with medication, and uncontrolled when she is inconsistent with diet, activity, and medication." (A.R. 18).

A to obesity, Plaintiff asserts that the process of taking insulin directly affected her obesity but does not provide any developed argument on this issue. (ECF No. 15, p. 18). The ALJ found Plaintiff's obesity to be a severe impairment and addressed it, concluding that Plaintiff had not shown further "limitations resulting from obesity which are not already included in the residual functional capacity determination, and ha[d] not shown competent medical opinions and evidence to show how obesity exacerbates [her] other impairments or interacts with them." (A.R. 18).

1    As to decreased sensation in her left foot with a limp, Plaintiff cites Dr. Sharma's opinion that documented "[s]ensations [being] decreased in the dorsal and medial aspect of the left foot and also anteromedial aspect of the left leg" but offers no argument as to what limitations this warrants. (A.R. 572; ECF No. 15, p. 18). Regardless, as will be further addressed, the ALJ considered Dr. Sharma's opinion, including the notation of "[s]ensation [being] in the left lower extremity," but ultimately concluded her opinion was only "somewhat persuasive," rejecting Dr. Sharma's more restrictive standing and walking limitations. (A.R. 22). Moreover, the ALJ found persuasive the opinion of Dr. Tanaka, who reviewed Dr. Sharma's assessment, but opined that Plaintiff had fewer restrictions in standing and walking. (A.R. 22, 74-78).

Lastly, Plaintiff notes that her distance vision in her left eye is 20/300 and states that "[t]he ALJ did not resolve the conflict between this loss of vision and the RFC" without ever explaining what the conflict is. (ECF No. 15, p. 19). The ALJ addressed Plaintiff's vision: "She had full field vision on the right, with amblyopic changes on the left. She was given ointment, and it was noted she had no retinopathy (Exhibit 15F, page 152). There is insufficient evidence to suggest that this condition has resulted in any work related activities." (A.R. 18). Moreover, as Defendant notes, Plaintiff had prescription glasses with a vision acuity of 20/30 while wearing them and was noted to be able to "visually move around the office without any help." (A.R. 574).

In short, the Court finds no error in the ALJ's consideration of these impairments, either in isolation or when combined.

**B.     Dr. Sharma's Opinion**

Plaintiff argues that the ALJ erred in evaluating the opinion of Dr. Sharma, who prepared a report after examining Plaintiff, opining as follows:

> Based upon today's physical examination and observations, she has limitation in lifting to 10 pounds frequently and 20 pounds occasionally. Standing and walking to 2 hours per day with normal breaks. Bending and stooping should be done occasionally. Sitting limited to 6 hours per day with normal breaks. No limitation in holding, feeling, or fingering objects. No limitation in speech, hearing, or vision.

(A.R. 573; ECF No. 15, pp. 19-20).

Defendant argues that the ALJ properly evaluated this opinion under the pertinent legal

standards. (ECF No. 17, p. 10).

Because Plaintiff applied for benefits in 2021, certain regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017, govern this case. 20 C.F.R. §§ 404.1520c, 416.920c. (A.R. 15). These regulations set "supportability" and "consistency" as "the most important factors" when determining an opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assignment of specific "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

As for the case authority preceding the new regulations that required an ALJ to provide clear and convincing or specific and legitimate reasons for rejecting certain medical opinions, the Ninth Circuit has concluded that it does not apply to claims governed by the new regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787. Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal citation omitted).

In conjunction with this requirement, "[t]he agency must 'articulate . . . . how persuasive'

it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 32 F.4th at 792.

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence. *Id.* § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim. *Id.* § 404.1520c(c)(2).

*Id.* at 791-92.

With the above standards in mind, the Court turns to the opinion of Dr. Sharma. In deeming this opinion "somewhat persuasive," the ALJ stated as follows:

> At the request of the State Agency, a consultative examination was performed by Dr. Sharma on October 22, 2021 (Exhibit 14F). Lumbar tenderness to palpation was noted, as was pain with forward flexion at 60 degrees and extension to 20 degrees. Straight leg raising was negative and no muscle spasms were noted. She had full range of motion of all extremities, with no swelling or tenderness of any joint. Strength was 5/5 in all extremities except the left lower extremity, which was 4/5. Sensation was decreased in the left lower extremity. She walked with a limp and could not do toe/heel walking. Dr. Sharma felt she could perform light work, but with standing and walking limited to two hours a day. While this opinion is somewhat persuasive, I do not find the limitation to two hours of standing and walking to be supported by the overall evidence. Her gait was normal in September 2020, and by December 2020 she had normal gait and could toe and heel walk. Thus, the treatment notes from her treating surgeon are not consistent with Dr. Sharma's findings at his one examination of the claimant. I do find the limitation to light work, however, to be supported by the overall evidence.

(A.R. 22).

As seen above, the ALJ took issue with Dr. Sharma's limitation of Plaintiff to two hours of standing and walking but agreed with the limitation to light work. In rejecting the standing and walking limitations, the ALJ properly considered the fact that the opinion was based on a single examination, which goes to supportability. *See Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) ("An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion."); 20 C.F.R. § 404.1520c(c)(3)(i) ("The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your

1 impairment(s).").

2 As to consistency, the ALJ reasonably concluded that Dr. Sharma's opinion was inconsistent with findings of normal gait and her ability to toe and heel walk. *Woods*, 32 F.4th at 793 (upholding decision to find opinion unpersuasive "because it was inconsistent with the overall treating notes and mental status exams in the record"). Moreover, the Court once again notes that the ALJ relied on the opinions of two other doctors in concluding that Plaintiff could stand and walk for six hours in a workday. (A.R. 22).

Accordingly, the Court concludes that the ALJ did not err by finding Dr. Sharma's opinion to be "somewhat persuasive" after consideration of the supportability and consistency factors.[1]

### C. Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ failed to provide specific, clear and convincing reasons to reject her subjective complaints. (ECF No. 15, p. 23). Defendant argues that "the ALJ's reasoning was sufficiently specific and substantial evidence supports it." (ECF No. 17, p. 11).

As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

---

[1] Plaintiff's argument that she could not perform past relevant work derives from her challenge to the ALJ's review of Dr. Sharma's opinion: "Both jobs require standing or walking for six hours a day. As discussed above the ALJ has not resolved the discrepancy between CE Neurologist's limitations to two hours a day of standing and the RFC and jobs supporting past relevant work. [] As such, the ALJ has not resolved the discrepancy between the jobs as described by the ALJ and the RFC as supported by medical evidence. Therefore, the ALJ's findings are not supported by substantial evidence." (ECF No. 15, p. 22). As the Court has found no error in the ALJ's review of Dr. Sharma's opinion or the RFC generally, it rejects Plaintiff's argument that she is incapable of performing past relevant work.

*Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996).

However, "[t]he standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). An ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995); *see Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Accordingly, our next task is to determine whether the ALJ's adverse credibility finding of Carmickle's testimony is supported by substantial evidence under the clear-and-convincing standard.").

As to Plaintiff's subjective complaints, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected cause the alleged symptoms." (A.R. 20). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

Here, the ALJ acknowledged Plaintiff's subjective complaints as follows:

> At the hearing on March 9, 2022, the claimant testified that she is unable to work due to her low back and legs. She said she gets "pinches" in her lower back, with difficulty walking. She stumbles and sometimes trips. She does not use an assistive device. The pain comes and goes. Pain has been worse since surgery. She is not currently receiving any treatment for her back and she is not taking any pain medication. Her legs get numb with tingling. She takes Aleve which helps her lower back but not her legs. She said she was told by Dr. Grant that there was nerve damage and it should get better with time, but it has not. The nerve problem in her leg has gotten worse. She can be on her feet for ten minutes before sitting or laying down. She lays down 50% of the day. She was given Norco after surgery but did not like the way it made her feel. She can lift and carry five pounds but would have difficulty carrying it across a room due to stumbling.
>
> She testified that she cannot do chores, such as laundry, cooking, dishes or yard work. She can drive "on and off." She cannot go shopping for groceries because she cannot walk that long. She can perform self-care and dress herself. On a typical day, she showers, and tries to keep moving because she cannot sit or stand for very long. She just walks around the house and lets the dogs out. She has no outside activities.

(A.R. 20).

Thereafter, the ALJ provided an overview of the medical records, in the process, noting that some records did not support or were inconsistent with her limitations to the degree she claimed.

> [T]he overall medical evidence of record is not consistent with her allegations of a complete inability to work. The treating spine surgeon's notes stop in December 2020. It would appear that was the last visit the claimant had with him (a year after her surgery). Her complaints and ongoing concerns at that time are not what she testified to in the hearing. She testified she has never gotten better, and the nerve pain has in fact gotten worse. While she did admit to "residual occasional dysesthesias tingling and numbness in the left foot," she noted it was transient. (Exhibit 16F, page 7). This is simply not consistent with her testimony. If her pain was as severe and constant as she alleged in the hearing, she would have visited her treating surgeon subsequent to December 2020, yet she did not. She required no pain medication six, nine and 12 months after surgery, which is not consistent with her allegations regarding pain. On September 14, 2020, she reported that she felt she could return to her job as long as she did not have to do heavy lifting or repetitive bending or twisting.
>
> While she testified that she has very limited activities, denying that she performs household chores or goes shopping for groceries, and stating that she spends her day walking around her house or laying down, other evidence indicates she is more active. On December 8, 2020, the claimant said that she had been "indulging a little more with restaurant dinners during past week" (Exhibit 4F, page 13). On December 14, 2020, she reported being "fairly active at home" (Exhibit 16F, page 7). In a statement submitted to the Administration on March 15, 2021, the claimant reported that daily activities included household chores and "trying to walk every day." She confirmed that she could do errands such as going to the post office or grocery store unassisted, and do light housekeeping chores (Exhibit 4E). The claimant was noted to be "out of state" on May 25, 2021 (Exhibit 9F, page 4). On October 19, 2021, she confirmed that she did in fact perform household chores (Exhibit 15F, page 43).
>
> While the claimant testified that she stumbles and trips and has difficulty walking, chart notes from treating providers make no mention of such difficulties. Six months after her surgery, her gait was noted to be intact, but she was unable to complete toe or heel walking due to back pain. Nine months after surgery, she had normal gait, and was walking on a regular basis. The last note from her surgeon, in December 2020, indicates normal gait, and that she was now able to toe and heel walk.

(A.R. 21-22).

The ALJ properly noted that the lack of objective evidence, such as chart notes making no mention of her claimed difficulties, as a basis to discount her complaints. Although the lack of

supporting evidence cannot be the sole basis to discount testimony, it can be a factor, and was properly considered here. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

Additionally, the ALJ properly discounted the degree of Plaintiff's subjective complaints because they were inconsistent with the record, such as normal notations of gait, and with her own reports of activities, such as the conflict between her testimony that she was very limited and her statements that she could go out to dinner, was fairly active at home, and did household chores. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012), *superseded on other grounds by statute* ("Even where [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); *see Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

In short, the Court concludes that the ALJ provided legally sufficient reasons to reject Plaintiff's subjective complaints.[2]

## II. CONCLUSION AND ORDER

Based on the above reasons, the decision of the Commissioner of Social Security is affirmed. The Clerk of Court is directed to enter judgment in favor of the Commissioner of Social Security and to close this case.

IT IS SO ORDERED.

Dated:   **November 13, 2023**              /s/ Erica P. Grosjean
                                            UNITED STATES MAGISTRATE JUDGE

---

[2] Having found no error as to Plaintiff's subjective complaints, the Court need not address Plaintiff's argument that the Court should credit her testimony as true. (ECF No. 15, p. 24).